2005 UT 14

**RUSSELL PACKARD DEVELOPMENT, INC., a California corporation; and Lawrence M. Russell, an individual, Plaintiffs and Respondents,**

v.

**Joel M. CARSON, an individual; William Bustos, an individual; and John Thomas, an individual, Defendants and Petitioners.**

No. 20030822.

Supreme Court of Utah.

March 1, 2005.

Michael R. Carlston, R. Brent Stephens, Heather S. White, Salt Lake City, for plaintiff.

Keith W. Meade, Salt Lake City, for defendant Carson.

Craig G. Adamson, Salt Lake City, for defendant Bustos.

George W. Pratt, Ali Levin, Salt Lake City, for defendant Thomas.

ON CERTIORARI TO THE UTAH
COURT OF APPEALS

DURRANT, Justice:

¶ 1 In this case, the defendants affirmatively concealed the plaintiffs' causes of action during a significant portion, but not all, of the relevant statute of limitations period. Although the plaintiffs were placed on inquiry notice of the defendants' fraudulent behavior within the relevant statute of limitations period, the plaintiffs failed to file their complaint until after that period expired. Due to this failure, the district court granted

the defendants' motions to dismiss the plaintiffs' claims as untimely. On appeal, the court of appeals reversed the district court, concluding that under the "concealment version" of the discovery rule, the determination of whether the relevant statute of limitations should be tolled was appropriately reserved for the fact-finder.

¶2 On certiorari, we are asked to consider (1) whether the court of appeals erred in its articulation and application of the "concealment version" of the discovery rule, and if so, (2) whether the court also erred in concluding that the plaintiffs' claims were improperly dismissed. Although we conclude that the court of appeals erroneously articulated and applied the discovery rule, we nevertheless agree with the court of appeals' determination that the district court improperly dismissed the plaintiffs' causes of action. Accordingly, we affirm the court of appeals' decision.

## BACKGROUND

¶3 When reviewing the propriety of a motion to dismiss, we accept the factual allegations in the complaint as true and interpret those facts and all reasonable inferences drawn therefrom in a light most favorable to the plaintiff as the nonmoving party. *Krouse v. Bower*, 2001 UT 28, ¶2, 20 P.3d 895. We recite the facts of this case accordingly.

¶4 Russell/Packard Development, Inc. ("Russell/Packard") is a corporation engaged in real estate development in California. Lawrence Russell was the principal shareholder and chief executive officer of Russell/Packard at all times relevant to this appeal. We refer to Russell/Packard and Russell collectively as Plaintiffs.

¶5 In 1996, Russell became interested in developing residential real estate in Utah. In furtherance of this interest, he contacted and teamed with John Thomas, a Utah real estate builder and developer. Together with Russell/Packard, Russell and Thomas organized a Utah limited liability company called PRP Development, L.C. ("PRP"). Thomas became the manager and fiduciary of PRP,

and PRP thereafter began pursuing real estate development activities in Utah. To aid in this pursuit, Thomas retained Joel Carson, a real estate agent with Wardley Better Homes and Gardens Real Estate ("Wardley"), to locate and review real estate proposals for purchase and development on PRP's behalf.

¶6 In 1996, Saratoga Springs Development, L.L.C. ("Saratoga"), a Utah real estate development company, retained Wardley's brokerage services to market and sell seventy-two twin home lots located in Saratoga Springs, Utah. In the summer of 1996, Thomas approached Dan Cary, the Wardley agent responsible for marketing the Saratoga property, to purchase the lots. Thomas did so at the urging of Carson and William Bustos, another Wardley agent with whom Carson had a business relationship and to whom Thomas owed a significant sum of money from previous business dealings. Thomas and Carson thereafter began ostensible negotiations with Saratoga and Wardley to purchase the lots through PRP. During these negotiations, both Cary and Wardley reasonably believed that they were negotiating to sell the lots to either Plaintiffs or Plaintiffs' real estate development entity, PRP.

¶7 In the fall of 1996, Carson, Thomas, and Bustos made an offer to purchase the lots for $25,000 per lot through CMT, Inc. ("CMT"), an entity controlled by Carson, Thomas, and Bustos.[1] Although CMT had no relationship with Plaintiffs or PRP, Carson and Thomas made misrepresentations and created the false appearance that CMT was affiliated with or owned by Russell, Russell/Packard, and PRP. To aid in this duplicity, Carson, Thomas, and Bustos misappropriated proprietary plans and drawings detailing Plaintiffs' own anticipated development and construction of the lots. As a result of these actions, Saratoga erroneously believed that it was negotiating the sale of the lots with PRP through CMT.

¶8 On November 4, 1996, CMT and Saratoga executed a real estate purchase contract for the Saratoga lots. The contract listed Carson as the real estate agent for CMT, and

---

1. CMT was not incorporated as a legal corporation in California until December 5, 1996. Additionally, CMT has never registered to do business in the State of Utah.

an individual by the name of "Charles Perez"[2] signed on CMT's behalf. The title company that was used to close the transaction between CMT and Saratoga received an earnest money wire from Poe Investments, L.L.C., a limited liability company organized by Carson and Bustos on or about July 19, 1996.

¶ 9 The same day the Saratoga–CMT contract was executed, Thomas made an offer in his capacity as an agent and fiduciary of PRP to purchase the lots from CMT for $30,000 per lot. PRP and CMT executed the real estate contract on November 8, 1996. Thomas signed as the general manager of PRP, "Charles Perez" signed on behalf of CMT, and Carson identified himself as the real estate agent for both CMT and PRP. The Saratoga–CMT and CMT–PRP contracts contained identical closing terms except for a $5,000 difference in price.

¶ 10 By interjecting themselves as undisclosed agents and principals for CMT in the above-described manner, Carson, Thomas, and Bustos successfully executed a "flip purchase and sale," allowing them to pocket $360,000 at Plaintiffs' expense. Although CMT was listed as the seller in the CMT–PRP contract and in the chain of title on the lots, neither Plaintiffs nor Saratoga knew what had occurred. Carson, Thomas, and Bustos continued to affirmatively conceal their misconduct until the spring of 2000.

¶ 11 It was at that time that a Saratoga accountant first began to suspect that CMT may not have been an agent or under the control of Plaintiffs. As a result of this suspicion, Saratoga contacted Plaintiffs, placing them on inquiry notice that CMT was not an agent for Saratoga. Plaintiffs thereafter investigated the control and ownership of CMT.

¶ 12 On November 30, 2001, Plaintiffs filed a complaint against Carson, Thomas, and Bustos (collectively "Defendants") in which Plaintiffs identified eight causes of action; namely, fraud, breach of fiduciary duty, civil conspiracy to defraud, commercial bribery, unjust enrichment, conversion and misappropriation of proprietary property, breach of a principal-agency relationship (as to Carson and Thomas), and intentional interference with prospective economic relations. Defendants responded by filing motions to dismiss. Among other defenses raised, Defendants asserted that Plaintiffs' claims were barred by the relevant statutes of limitation. The district court agreed with Defendants and granted their motions to dismiss.

¶ 13 On appeal, the court of appeals reversed the district court. *Russell/Packard Dev., Inc. v. Carson,* 2003 UT App 316, ¶ 36, 78 P.3d 616. The court acknowledged that, absent tolling, Plaintiffs' claims for breach of fiduciary duty, civil conspiracy, unjust enrichment, conversion and misappropriation, breach of principal-agent relation, and intentional interference with prospective economic relations (collectively the "four-year claims") expired on November 7, 2000—approximately one year before Plaintiffs filed their complaint. *Id.* at ¶ 11. However, applying the concealment version of the discovery rule, the court concluded that the district court erred in granting Defendants' motions to dismiss.[3] *Id.* at ¶ 28.

¶ 14 In reaching this conclusion, the court of appeals began its analysis by addressing what it identified as a "threshold issue" that must be established before the discovery rule may apply. *Id.* at ¶ 16. Specifically, it examined whether Plaintiffs had adequately demonstrated that they neither knew nor should have known of their causes of action against Defendants before being put on notice of a potential fraudulent transaction in the spring

**2.** Plaintiffs believe "Charles Perez" is affiliated with CMT although they do not know the exact nature of this affiliation.

**3.** The court of appeals also concluded that the district court erred in dismissing Plaintiffs' fraud claim, *Russell/Packard,* 2003 UT App 316 at ¶¶ 28 n. 11, 31, 78 P.3d 616, and Plaintiffs' breach of fiduciary duty claim against Bustos, *id.* at ¶ 35.

These holdings are not before us; therefore, we do not address them.

We do observe, however, that Plaintiffs' counsel conceded during oral argument before the court of appeals that Plaintiffs' commercial bribery claim was properly dismissed. Because the parties agree that the court of appeals erred in failing to dismiss this claim, we dismiss the Plaintiffs' commercial bribery claim.

of 2000. *Id.* Accepting all facts alleged in the complaint as true and interpreting those facts in a light most favorable to Plaintiffs, the court concluded that Plaintiffs had made a sufficient threshold showing. *Id.* at ¶ 20.

¶ 15 Having determined that Plaintiffs did not possess either actual or constructive knowledge of the relevant facts underlying their claims prior to the spring of 2000, the court of appeals then addressed whether the concealment version of the discovery rule [4] should operate to toll the statute of limitations under the circumstances. *See id.* at ¶¶ 21–28. In so doing, the court of appeals cited our decision in *Berenda v. Langford,* 914 P.2d 45 (Utah 1996), for the proposition that the concealment version of the discovery rule will toll a statute of limitations if a plaintiff first " 'make[s] a prima facie showing of fraudulent concealment and then demonstrate[s] that, given the defendant's actions, a reasonable plaintiff would not have discovered his or her claim earlier.' " *Russell/Packard,* 2003 UT App 316 at ¶ 21, 78 P.3d 616 (quoting *Berenda,* 914 P.2d at 53). Applying the first prong of the *Berenda* rule, the court determined that Plaintiffs had made a prima facie showing of fraudulent concealment. *Id.* at ¶ 28. Applying the second prong of the *Berenda* rule, the court concluded that whether Plaintiffs acted reasonably in light of Defendants' conduct was a determination appropriately reserved for the fact-finder. *See id.* at ¶¶ 23, 27–28. Consequently, the court of appeals held that the Defendants' motions to dismiss Plaintiffs' four-year claims were improperly granted and reversed the district court. *Id.* at ¶¶ 28, 36.

¶ 16 On certiorari, Defendants argue that the court of appeals' reliance on *Berenda* was erroneous. They assert that, in applying the standard articulated in *Berenda,* the court of appeals confused the discovery rule standards applicable to statutes of limitations that have internal discovery rules,[5] such as the one in *Berenda,* with those that lack internal discovery rules. Because the four-

year statute of limitations at issue in this case lacks an internal discovery rule, *see* Utah Code Ann. § 78–12–25(3) (1996), Defendants argue that the court of appeals should have followed our decision in *Walker Drug Co. v. La Sal Oil Co.,* 902 P.2d 1229 (Utah 1995). In that case, we stated that a period of limitations cannot be tolled under the concealment version of the discovery rule unless the plaintiff makes an "initial showing" that the plaintiff "did not know and could not reasonably have discovered the facts underlying the cause of action in time to commence an action within that period." *Id.* at 1231. Defendants contend that, under *Walker Drug,* we should reverse the court of appeals and affirm the district court's dismissal of Plaintiffs' four-year claims because Plaintiffs have failed to make an initial showing that they neither knew nor could reasonably have discovered the facts underlying their causes of action in time to commence their suit before the limitations period expired.

¶ 17 We have jurisdiction to review the court of appeals' decision pursuant to Utah Code section 78–2–2(3)(a) (2002).

## STANDARD OF REVIEW

¶ 18 "The applicability of a statute of limitations and the applicability of the discovery rule are questions of law, which we review for correctness." *Spears v. Warr,* 2002 UT 24, ¶ 32, 44 P.3d 742.

## ANALYSIS

¶ 19 We agree with Defendants that the court of appeals erred in its articulation and application of the discovery rule in this case. However, Defendants' own proposed application of the discovery rule is similarly flawed. Because it is evident from the parties' arguments that our jurisprudence in this area is less than clear, we take this opportunity to first clarify the appropriate circumstances under and the means by which the discovery rule may operate to toll a statute of limitations. After doing so, we will then address

---

4. The concealment version of the discovery rule will be discussed in detail later in our opinion. *See infra* ¶¶ 25–31.

5. As addressed more fully herein, an "internal discovery rule" refers to a discovery rule that is contained within and therefore mandated by the statute of limitations itself. *See infra* ¶ 21.

whether, under a proper application of the discovery rule, the court of appeals correctly determined that Plaintiffs' four-year claims should survive Defendants' motions to dismiss.

## I.  THE DISCOVERY RULE

¶ 20 As a general rule, a statute of limitations begins to run "upon the happening of the last event necessary to complete the cause of action." *Myers v. McDonald,* 635 P.2d 84, 86 (Utah 1981). Once a statute has begun to run, a plaintiff must file his or her claim before the limitations period expires or the claim will be barred. *See id.* Mere ignorance of the existence of a cause of action will neither prevent the running of the statute of limitations nor excuse a plaintiff's failure to file a claim within the relevant statutory period. *See id.*

¶ 21 That said, we have acknowledged two narrow settings in which a statute of limitations may be tolled " 'until the discovery of facts forming the basis for the cause of action.' " *Hill v. Allred,* 2001 UT 16, ¶ 15, 28 P.3d 1271 (quoting *Myers,* 635 P.2d at 86). We refer to the rule governing this exception to the usual application of the statute of limitations as the "discovery rule." The first setting in which the discovery rule applies is the most obvious and involves situations in which a relevant statute of limitations, by its own terms, mandates application of the discovery rule. *See, e.g., id.* at ¶ 16; *Berenda v. Langford,* 914 P.2d 45, 51 (Utah 1996); *Myers,* 635 P.2d at 86. In previous decisions, we have referred to these types of statutes as containing an "internal discovery rule." *See Berenda,* 914 P.2d at 55–56. However, to be more descriptive, we will hereinafter refer to this type of statute as containing a "statutory discovery rule." An example of a statutory discovery rule is found in the three-year statute of limitations governing claims based on fraud or mistake, which provides that a cause of action will not accrue "until the discovery by the aggrieved party of the facts constituting the fraud or mistake." Utah Code Ann. § 78–12–26(3) (2002). As is evident from this statutory directive, "the question is not *whether* the discovery rule applies—it does by virtue of

the statute," but rather, *when* a plaintiff either discovered or should have discovered his or her cause of action, thereby triggering the running of the statute of limitations. *Berenda,* 914 P.2d at 56.

¶ 22 Although determining when a plaintiff either discovered or reasonably should have discovered his or her cause of action is often a difficult and intensely fact-dependent inquiry, the underlying application of a statutory discovery rule is, in its broadest and most basic sense, a relatively simple matter. Once the triggering event identified by the statutory discovery rule occurs—i.e., when a plaintiff first has actual or constructive knowledge of the relevant facts forming the basis of the cause of action—the statutory limitations period begins to run and a plaintiff who desires to file a claim must do so within the time specified in the statute. Otherwise, the claim will be barred.

¶ 23 To illustrate this concept, if we were to apply the statutory discovery rule contained in the three-year statute of limitations identified above, the statute of limitations would begin running from the date a plaintiff either discovered or should have discovered his or her claim. A plaintiff would then have three years from that date within which to file a complaint before the statute would bar recovery on the claim.

¶ 24 In contrast with the first setting described above, the second setting in which the discovery rule may toll a statute of limitations is less obvious and involves situations where a relevant statute of limitations provides only a fixed limitations period with no statutory discovery rule exception. *See, e.g., Walker Drug Co. v. La Sal Oil Co.,* 902 P.2d 1229 (Utah 1995); *Warren v. Provo City Corp.,* 838 P.2d 1125 (Utah 1992); *Atwood v. Sturm, Ruger & Co.,* 823 P.2d 1064 (Utah 1992); *Brigham Young Univ. v. Paulsen Constr. Co.,* 744 P.2d 1370 (Utah 1987). An example of a statute that does not mandate application of the discovery rule is the four-year statute of limitations at issue in this case, which provides simply that "[a]n action may be brought within four years ... for relief not otherwise provided for by law." Utah Code Ann. § 78–12–25(3) (1996). In the past, we have often evaluated whether

the discovery rule should apply under these types of statutes of limitations without explicitly referencing the principle that the discovery rule operates differently when a statute of limitations contains a statutory discovery rule and when it does not. *See, e.g., Walker Drug,* 902 P.2d at 1231–32; *Brigham Young Univ.,* 744 P.2d at 1373–74. However, the discovery rule does operate differently in these distinct settings. *See Berenda,* 914 P.2d at 55–56. Accordingly, to clarify this distinction, we hereinafter refer to the discovery rule as it applies to a statute of limitations that does not contain a statutory discovery rule as an "equitable discovery rule."

¶ 25 We have limited the circumstances in which an equitable discovery rule may operate to toll an otherwise fixed statute of limitations period to the following two situations: (1) "where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct," and (2) "where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the discovery of the cause of action." *Walker Drug,* 902 P.2d at 1231 (internal quotation omitted); *see also Myers,* 635 P.2d at 86. We have previously suggested that these "concealment" and "exceptional circumstances" versions of the equitable discovery rule may apply even where a statute of limitations contains a statutory discovery rule. *See Berenda,* 914 P.2d at 52. However, we now clarify and emphasize that these equitable exceptions apply *only* where a statute of limitations does not, by its own terms, already account for such circumstances—i.e., where a statute of limitations lacks a statutory discovery rule. Thus, it would be inappropriate to apply the concealment version of the discovery rule in the context of the three-year statute of limitations for fraud. *See* Utah Code Ann. § 78–12–26(3) (2002). Because only the concealment version of the discovery rule is at issue in this case, we confine our analysis to its application and do not address the exceptional circumstances version of the discovery rule.

¶ 26 Unlike the majority of statutory discovery rules, which provide that a cause of action will not accrue until a plaintiff discovers or reasonably should have discovered the facts constituting his or her cause of action, *see, e.g., id.,* the concealment version of the discovery rule does not automatically operate to toll the limitations period until the plaintiff's actual or constructive discovery of his or her claim. Rather, the rule requires an evaluation of the reasonableness of a plaintiff's conduct in light of the defendant's fraudulent or misleading conduct. This is because invocation of the rule "is essentially a claim of equitable estoppel, whereby a defendant who causes a delay in the bringing of a cause of action is estopped from relying on the statute of limitations as a defense to the action." *Warren,* 838 P.2d at 1129–30. Given the rule's genesis in estoppel, application of the concealment version of the discovery rule requires a demonstration that the party seeking to exercise the rule has acted in a reasonable and diligent manner. *Id.* at 1130. In order to meet this reasonableness standard, a plaintiff must demonstrate that, "given the defendant's actions, a reasonable plaintiff would not have brought suit within the statutory period." *Id.*

¶ 27 We acknowledge that, in *Walker Drug,* we restated this standard as requiring a plaintiff to show that he or she "did not know and could not reasonably have discovered the facts underlying the cause of action in time to commence an action within that period." 902 P.2d at 1231 (citing *Warren,* 838 P.2d at 1129–30); *see also O'Neal v. Div. of Family Servs.,* 821 P.2d 1139, 1144 (Utah 1991). However, we disagree with Defendants' assertion that *Walker Drug* bars a plaintiff from invoking the discovery rule if the plaintiff knew or should have known of his or her cause of action at any time prior to the expiration of the fixed limitations period—even if a plaintiff would have discovered the claim only a week or a day before the limitations period expired. Such an overly strict interpretation would run counter to the touchstone of reasonableness upon which the concealment version of the discovery rule is based. Interpreting *Walker Drug* as Defendants suggest would also undermine one of the two competing policies that drives appli-

cation of the discovery rule in situations where a defendant has taken affirmative steps to conceal a plaintiff's cause of action.

¶ 28 As we explained in *Berenda*, when a defendant fraudulently causes a plaintiff to delay in bringing a cause of action, the discovery rule balances (1) the policy underlying all statutes of limitations " 'to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared,' " 914 P.2d at 52 (quoting *Myers*, 635 P.2d at 86 (further citation omitted)), with (2) the policy of "not allowing a defendant who has concealed his wrongdoing to profit from his concealment," *id.* (citing *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 349, 22 L.Ed. 636 (1874) (further citation omitted)). If we were to look only to whether a plaintiff theoretically *could* have brought a suit before the limitations period expired without looking to the relative reasonableness or unreasonableness of that action under the circumstances, we would reward a defendant's fraudulent and deceptive misbehavior by depriving an innocent plaintiff of a reasonable period within which to act. This we refuse to do. "[T]o permit one practicing a fraud and then concealing it to plead the statute of limitations when, in fact, the injured party did not know of and could not with reasonable diligence have discovered the fraud" would be "not only subversive of good morals, but also contrary to the plainest principles of justice." 51 Am.Jur.2d *Limitation of Actions* § 183 (2004). Instead, we reinforce the principle that the concealment version of the discovery rule applies when a plaintiff has acted reasonably in light of the defendant's actions.

■ ¶ 29 Therefore, we clarify that once a defendant has affirmatively established that a plaintiff filed his or her claim outside a statute of limitations period, there are two instances in which a plaintiff may raise the concealment version of the discovery rule to toll the statute of limitations until the plaintiff's actual or constructive discovery, whichever is earlier, of the facts forming the basis for the cause of action. First, a plaintiff may

successfully toll a statute of limitations by showing that, given the defendant's concealment of the plaintiff's cause of action, the plaintiff neither discovered nor reasonably should have discovered the facts underlying the cause of action before the limitations period expired. Once a plaintiff makes this showing, the concealment version of the discovery rule will operate to toll the relevant statute of limitations, and the limitations period will not commence until the date the plaintiff possessed actual or constructive knowledge of the facts forming the basis of his or her cause of action. Using the four-year statute of limitations at issue in this case for illustration, a plaintiff who neither knew nor should have known of his or her cause of action until *after* the four-year limitations period expired would receive four years from the date of actual or constructive discovery within which to file a claim.

¶ 30 Second, if a plaintiff either knew or reasonably should have known of the facts underlying his or her cause of action *before* a limitations period expired, the plaintiff may nevertheless invoke the concealment version of the discovery rule. However, for the rule to excuse a plaintiff's failure to file within the fixed limitations period in these circumstances, a plaintiff must show that, given the defendant's actions, the plaintiff acted reasonably in failing to file suit before the limitations period expired. To make this showing, a plaintiff must demonstrate that a reasonably diligent plaintiff would not necessarily have filed a complaint within the limitations period; or said another way, that a reasonable plaintiff may have delayed in filing his or her claim until after the limitations period expired. If a plaintiff makes this showing, the concealment version of the discovery rule will operate to toll the limitations period until the point at which the plaintiff either discovered or reasonably should have discovered the relevant facts forming the basis of the cause of action. If a plaintiff cannot make this showing, however, the concealment version of the discovery rule will not operate to toll the statute of limitations, and the plaintiff's claim will be barred.[6]

---

**6.** We acknowledge that, under the concealment version of the discovery rule, a defendant may, as

¶ 31 Using the four-year statute of limitations at issue in this case for illustration, assume a plaintiff had either actual or constructive knowledge of the facts underlying his or her cause of action five months before the four-year statute of limitations expired but filed a complaint outside the limitations period. Assume further that the plaintiff successfully demonstrates that, notwithstanding this knowledge within the four-year limitations period, he or she acted reasonably in not filing a complaint until after the limitations period expired. Under such circumstances, the concealment version of the discovery rule would operate to toll the four-year limitations period until the point at which the plaintiff either discovered or should have discovered his or her cause of action. Thus, the four-year limitations period would begin running from the date of actual or constructive discovery—i.e., five months before the limitations period would have expired absent tolling—and the plaintiff would have four years from that date to file his or her claim.

¶ 32 Having clarified the appropriate application of the concealment version of the equitable discovery rule, we return to examine the court of appeals' decision in this case. In its opinion, the court of appeals conducted an initial inquiry into whether Plaintiffs knew or should have known of their causes of action some time prior to the filing of their complaint. *Russell/Packard*, 2003 UT App 316 at ¶¶ 16–20, 78 P.3d 616. However, the court evaluated whether Plaintiffs possessed or lacked actual or constructive knowledge of their four-year claims only between the date on which the statute of limitations would have commenced running absent tolling—i.e., November 8, 1996, the date the PRP–CMT contract was executed—and the time at which Plaintiffs were put on inquiry notice that the Saratoga transaction was potentially fraudulent—i.e., the spring of 2000. *Id.* The court of appeals did not inquire as to whether

Plaintiffs either knew or reasonably should have discovered the facts underlying their causes of action *after* being put on inquiry notice that CMT was not an agent for Saratoga but *before* the four-year limitations period expired. Additionally, although the court evaluated the general reasonableness of Plaintiffs' conduct in light of Defendants' actions, the court failed to do so in the context of determining whether, if Plaintiffs had actual or constructive knowledge of their causes of action within the statute of limitations period, a reasonably diligent plaintiff may have delayed in filing his or her claim until after the limitations period expired. *See id.* at ¶¶ 23–28.

¶ 33 Because the court of appeals failed to conduct either of these inquiries, the court erroneously applied the concealment version of the discovery rule. We therefore turn our examination to whether Plaintiffs have sufficiently demonstrated either that (1) they neither knew nor reasonably should have known of the facts underlying their causes of action before the four-year limitations period expired; or (2) notwithstanding their actual or constructive knowledge of the facts underlying their causes of action within the limitations period, Plaintiffs acted reasonably in not filing a complaint until after the four-year limitations period expired.

## II. APPLICATION OF THE CONCEALMENT VERSION OF THE EQUITABLE DISCOVERY RULE

¶ 34 When reviewing a rule 12(b)(6) motion to dismiss, we accept the factual allegations in the complaint as true and interpret those facts, and all reasonable inferences drawn therefrom, in a light most favorable to the plaintiff as the nonmoving party. *Krouse v. Bower*, 2001 UT 28, ¶ 2, 20 P.3d 895. Because the propriety of a motion to dismiss is a question of law, we review the court of appeals' determination that the district court

---

a practical matter, effectively shorten the limitations period available to a plaintiff by concealing a plaintiff's cause of action during part, or all, of the statutory period. This rule may appear inequitable at first glance, especially when juxtaposed with the operation of a statutory discovery rule, such as that contained under the three-year statute of limitations used in our illustration above.

*See supra* ¶ 23; Utah Code Ann. § 78–12–26(3). However, a plaintiff will be prohibited from successfully raising the concealment version of the discovery rule only in situations where the plaintiff has acted unreasonably, i.e., where the plaintiff has failed to file a complaint before the limitations period expired and a reasonable plaintiff would necessarily have done so.

erred in dismissing Plaintiffs' four-year claims for correctness. *Spears v. Warr*, 2002 UT 24, ¶ 32, 44 P.3d 742.

¶ 35 In this case, Plaintiffs assert that they did not have actual notice of the facts underlying their four-year claims until after the statute of limitations expired on November 7, 2000. Interpreting the facts alleged in Plaintiffs' complaint under the deferential standard required in the context of a rule 12(b)(6) motion to dismiss, we agree with this assertion.

¶ 36 Additionally, Defendants do not challenge the court of appeals' determination that Plaintiffs did not possess constructive notice of the relevant facts underlying their causes of action until after Saratoga informed Plaintiffs in the spring of 2000 that CMT was not a Saratoga agent. As a result, we begin our analysis by examining whether Plaintiffs should have discovered, i.e., had constructive notice of, the facts forming the basis for their causes of action in the five-month period after which they were put on inquiry notice and before the statute of limitations expired.

¶ 37 Defendants contend that Plaintiffs should be charged with constructive knowledge of the relevant facts within this period; specifically, at the time Plaintiffs received inquiry notice of the potentially fraudulent Saratoga transaction. In support of this contention, Defendants point to the equitable inquiry notice maxim that "the means of knowledge is equivalent to knowledge." *Berenda v. Langford*, 914 P.2d 45, 52 (Utah 1996); *see also First Am. Title Ins. Co. v. J.B. Ranch, Inc.*, 966 P.2d 834, 838 (Utah 1998) ("Whatever is notice enough to excite attention and put the party on his guard and call for inquiry is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it." (internal quotation omitted)); *Baldwin v. Burton*, 850 P.2d 1188, 1195–97 (Utah 1993) (holding that the discovery rule did not operate to toll a statute of limitations where the plaintiffs would have been on inquiry notice of a prior fraudulent transfer if they had exercised reasonable diligence).

¶ 38 The problem with Defendants' argument is that, contrary to their assertions, inquiry notice operates differently "when a plaintiff alleges that a defendant took affirmative steps to conceal the plaintiff's cause of action." *Berenda*, 914 P.2d at 51. When a plaintiff has made a prima facie showing of fraudulent concealment, a plaintiff will be charged with constructive notice of the facts forming the basis of a cause of action only at that point at which a plaintiff, reasonably on notice to inquire into a defendant's wrongdoing, would have, with due diligence, discovered the facts forming the basis for the cause of action despite the defendant's efforts to conceal it. *See id.* at 51–52.[7]

¶ 39 The question of when a plaintiff reasonably would have discovered the facts underlying a cause of action in light of a defendant's affirmative concealment is a "highly fact-dependent legal question[ ]" that is "necessarily a matter left to trial courts and finders of fact." *Id.* at 53; *cf. Spears*, 2002 UT 24 at ¶ 32, 44 P.3d 742 ("[T]he applicability of a statute of limitations and the discovery rule also involves a subsidiary factual

---

7. After explaining in *Berenda* that inquiry notice operates differently "when a plaintiff alleges that a defendant took affirmative steps to conceal the plaintiff's cause of action," we went on to state that, "[i]n such a situation, the plaintiff can avoid the full operation of the discovery rule by making a prima facie showing of fraudulent concealment and then demonstrating that, given the defendant's actions, a reasonable plaintiff would not have discovered the claim earlier." 914 P.2d at 51. The latter part of this quoted language is admittedly confusing, and has been misinterpreted as articulating an analytical standard under which the concealment version of the discovery rule will operate to toll a statute of limitations. *See, e.g., Russell/Packard*, 2003 UT App 316 at ¶ 15, 78 P.3d 616. This is incorrect.

We clarify that the above-quoted language in *Berenda* stands only for the principle that, where a plaintiff makes a prima facie showing of fraudulent concealment on the part of the defendant, inquiry notice operates differently depending on whether a statutory or an equitable discovery rule applies. In other words, in cases of fraudulent concealment, a plaintiff will not automatically be charged with constructive notice of a claim simply by virtue of being on inquiry notice of it. *See Berenda*, 914 P.2d at 52–53; *see also Hill v. Allred*, 2001 UT 16, ¶¶ 16–21, 28 P.3d 1271 (applying the *Berenda* inquiry notice standard to evaluate *when* the plaintiff discovered her cause of action and thereby triggered the running of a statute of limitations).

determination—the point at which a person reasonably should know that he or she has suffered a legal injury. This is a question of fact."). Thus, "weighing the reasonableness of the plaintiff's conduct in light of the defendant's steps to conceal the cause of action necessitates the type of factual findings which preclude [judgment as a matter of law] in all but the clearest of cases," i.e., "when the facts fall on two opposite ends of a factual continuum." *Berenda*, 914 P.2d at 54. These include situations in which either (1) "the facts are so clear that reasonable persons could not disagree about the underlying facts or about application of the governing legal standard to the facts," or (2) "the facts underlying the allegation of fraudulent concealment are so tenuous, vague, or insufficiently established that . . . the claim fails as a matter of law." *Id.*

¶ 40 Here, Plaintiffs have made a prima facie showing of fraudulent concealment, and the facts do not fall on either end of *Berenda's* factual continuum. Consequently, it would be inappropriate for this court to make a factual determination as to when Plaintiffs should be charged with constructive notice of their claims.

¶ 41 From the allegations made in Plaintiffs' complaint, it is evident that Plaintiffs discovered a number of facts after being notified in the spring of 2000 that the Saratoga transaction was potentially fraudulent. For example, Plaintiffs learned that

(1) Thomas and Carson had had previous business dealings in the real estate sales, development, and construction industry in Utah.

(2) Bustos had had significant business relationships with Carson.

(3) Thomas owed Bustos significant sums of money from a previous business relationship at the time Thomas retained Carson in connection with PRP's review of proposals and offers to purchase real property for development by Plaintiffs.

(4) In the fall of 1996, Defendants made an offer to purchase lots from Saratoga for $25,000 per lot through the entity known as CMT.

(5) CMT is a California corporation that was not incorporated until December 1996. CMT is not licensed with the Utah Department of Commerce to do business as a foreign corporation in the State of Utah.

(6) Defendants committed overt acts to defraud Saratoga and Plaintiffs by deceiving Saratoga and Plaintiffs into believing that each was negotiating with the other through CMT.

(7) Carson told Dan Cary, Saratoga's real estate agent, on several occasions that CMT was affiliated with, or part of, or owned by Plaintiffs.

(8) To induce Saratoga into selling the lots to CMT instead of other real estate developers from whom Saratoga was receiving offers, Defendants used and converted Plaintiffs' proprietary plans and drawings for the development and construction of the lots and presented these materials to Saratoga's agents.

(9) CMT executed a contract to purchase the lots on November 4, 1996. An individual by the name of "Charles Perez" signed on behalf of CMT, with Carson acting as CMT's real estate agent.

(10) The Saratoga–CMT contract contained identical terms as the CMT–PRP contract, except for a $5,000 difference in price.

(11) The same day the Saratoga–CMT contract was executed, the title company used to close the transaction on the lots received a $10,000 earnest money wire from Poe Investments, L.L.C.

(12) At that time, Poe Investments, L.L.C., was comprised of Carson and Bustos.

(13) After the CMT–PRP contract was executed, the $10,000 earnest money wire referencing Poe was distributed at the closing by checks to Carson and Bustos at the Defendants' direction.

(14) Defendants' active concealment constituted a pattern during October and November 1996 and continued until the spring of 2000.

¶ 42 We acknowledge that it is possible and perhaps even probable that a reasonable plaintiff would have discovered a sufficient

number of these facts in the five months before the statute of limitations expired to file a complaint. However, we are persuaded that one could legitimately dispute the precise point, if any, within that five-month period at which a reasonably diligent plaintiff would have discovered such necessary facts. Thus, because we cannot conclusively determine *when* Plaintiffs should be charged with constructive notice of their claims, we cannot ultimately determine whether, even assuming Plaintiffs *should* have discovered their claims at some point within the four-year statute of limitations, Plaintiffs acted reasonably in not filing their complaint within the remaining limitations period.

¶ 43 We therefore conclude that the facts alleged in Plaintiffs' complaint are sufficient to raise a factual question as to whether the concealment version of the equitable discovery rule should toll the four-year statute of limitations in this case. Because " 'close calls are for juries, not judges, to make,' " *Berenda,* 914 P.2d at 54 (quoting *Chapman v. Primary Children's Hosp.,* 784 P.2d 1181, 1186 (Utah 1989)), it is inappropriate for this court to make the determination as to whether Plaintiffs reasonably should or should not have filed their four-year claims before the limitations period expired. Consequently, the court of appeals correctly determined that the district court erred in dismissing Plaintiffs' four-year claims.

## CONCLUSION

¶ 44 For the concealment version of the equitable discovery rule to toll a statute of limitations until a plaintiff's discovery of the facts forming the basis for the cause of action, a plaintiff must demonstrate either (1) that the plaintiff neither knew nor reasonably should have known of the facts underlying his or her cause of action before the fixed limitations period expired; or (2) that notwithstanding the plaintiff's actual or constructive knowledge of the facts underlying his or her cause of action within the limitations period, a reasonably diligent plaintiff may have delayed in filing his or her complaint until after the statute of limitations expired.

¶ 45 Although the court of appeals erred in failing to apply this legal standard, the court correctly concluded that the district court erred when it dismissed Plaintiffs' four-year claims. Plaintiffs' complaint raises a legitimate factual question as to whether Plaintiffs should have known of the facts underlying their causes of action within the limitations period. As a result, the determination of whether Plaintiffs should be charged with constructive notice of their causes of action within the relevant four-year statute of limitations, and if so, whether, given that knowledge, Plaintiffs acted reasonably in failing to file their complaint within the limitations period are questions appropriately reserved for the fact-finder.

¶ 46 For these reasons, we affirm the court of appeals' decision and remand to the district court for further proceedings consistent with this opinion.

¶ 47 Chief Justice DURHAM, Justice PARRISH, Justice NEHRING, and Judge DAWSON concur in Justice DURRANT's opinion.

¶ 48 Having disqualified himself, Associate Chief Justice WILKINS does not participate herein, District Court Judge GLEN A. DAWSON sat.