2011 UT App 343

The ESTATE OF Ralph O. DAVIS Sr.;
or the Ralph O. Davis Sr. Trust,
Plaintiff and Appellant,

v.

Marion DAVIS and Donna Davis,
Defendants and Appellees.

Marion Davis and Donna Davis,
Counterclaimants and
Appellees,

v.

The Estate of Ralph O. Davis Sr.; or the
Ralph O. Davis Sr. Trust, Counterde-
fendant and Appellant.

No. 20100176–CA.

Court of Appeals of Utah.

Oct. 14, 2011.

M. Dayle Jeffs and Liisa A. Hancock, Provo, for Appellant.

Mark D. Stubbs and Karen H. North, Provo, for Appellees.

Before Judges DAVIS, McHUGH, and CHRISTIANSEN.

1. Although the trial court's ruling on summary judgment properly construes the facts in favor of the nonmoving party, Ralph's Estate, the judgment contains a section titled "Findings of Fact." Because summary judgment is appropriate only where there are no material facts in dispute, *see Snow v. Rudd,* 2000 UT 20, ¶ 12, 998 P.2d 262,

## OPINION

McHUGH, Associate Presiding Judge:

¶ 1 The Estate of Ralph O. Davis (Ralph's Estate) appeals the trial court's order granting summary judgment in favor of Marion and Donna Davis (Marion), on the ground that Ralph's Estate's claim is barred by the statute of limitations. We affirm.

## BACKGROUND [1]

¶ 2 In or around the spring of 1938, Glen and Lilly Davis purchased a 120–acre parcel of real property (the property) from the Federal Land Bank. In 1946, Glen and Lilly Davis transferred one acre of the property by warranty deed to their son and daughter-in-law, Marion and Donna Davis, on which Marion and Donna could build a house. On or about that same date, Glen and Lilly Davis transferred a one-third undivided interest in fifty-nine acres of the property to each of their three sons, Ralph, Sterling, and Marion. In 1950, Marion asked Sterling and Ralph to transfer their shares of the property to him so that he could use the property as collateral to obtain a loan to finance the construction of a home. Sterling and Ralph agreed to convey their interests in the property to Marion for that purpose with the understanding that the property would be transferred back to all three brothers when the loan was repaid. In 1951, Marion reconveyed to Ralph and Sterling their original one-third shares of the property via warranty deed.

¶ 3 In 1966, Marion and Sterling both wished to use the property as collateral for a second loan. The brothers again transferred their shares to Marion and he and Sterling shared the loan proceeds. Marion finished repaying the second loan in 1980, at which time the brothers discussed a physical division of the property. In late 1980, Ralph wrote a letter to Marion suggesting that the brothers partition the property into three

an order or memorandum decision granting summary judgment should more properly refer to a "Statement of Uncontested Facts." Here, we state the uncontested facts as agreed to by the parties and resolve any contested facts in favor of Ralph's Estate. *See id.*

separate parcels. In the letter, Ralph states that "[t]he signing over of the deed several years ago was done in good faith that at the time the title was cleared it would be vested to three equal shares." Ralph included a proposal for the boundaries of three individually-owned parcels and also suggested that Ralph lease his property to Marion for one dollar a year so that Marion could continue to farm it. Marion did not respond to Ralph's letter for almost ten years. During this time, the deed to the property remained in Marion's name, and Marion worked the farm. In addition, Marion paid all the property expenses while keeping all the profits from the farming operations.

¶ 4 In 1989, the three brothers again discussed a physical division of the property. At that time, Sterling relinquished any interest in the property because Marion had repaid the $4000 Sterling received from the proceeds of the second loan. Other than this concession by Sterling, the brothers did not reach an agreement with regard to the property in 1989. Then, on March 10, 1990, Marion sent a letter to Ralph explaining that he had not previously responded to Ralph's 1980 letter because he found it offensive. Marion's 1990 letter further states, "As was agreed at that time [in 1980], I am sending you a warranty deed made out for [ten] acres located in the northwest corner of the farm." There is no indication that Ralph ever accepted this proposal or took any other action in response to it.

¶ 5 Ralph passed away in 2005. Marion continues to farm or rent the property. Ralph's Estate filed suit on May 18, 2007, to quiet title to a one-third share of the property. Marion filed a motion for summary judgment based on the expiration of the statute of limitations, which the trial court granted

on March 31, 2009. Ralph's Estate now appeals.

## ISSUES AND STANDARDS OF REVIEW[2]

¶ 6 Ralph's Estate argues that the trial court erred by concluding that the statute of limitations was not tolled by the discovery rule and, therefore, summary judgment was proper in favor of Marion. "A trial court's grant or denial of summary judgment is reviewed for correctness." *Snow v. Rudd,* 2000 UT 20, ¶ 9, 998 P.2d 262. Further, "[s]ummary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The court must view all facts and inferences in the light most favorable to the nonmoving party." *Allred ex rel. Jensen v. Allred,* 2008 UT 22, ¶ 15, 182 P.3d 337 (footnote omitted). Additionally, "[t]he applicability of a statute of limitations and the applicability of the discovery rule are questions of law, which we review for correctness." *Russell Packard Dev., Inc. v. Carson,* 2005 UT 14, ¶ 18, 108 P.3d 741 (internal quotation marks omitted). Finally, "we may affirm a grant of summary judgment on any ground available to the trial court, even if it is one not relied on below." *Higgins v. Salt Lake Cnty.,* 855 P.2d 231, 235 (Utah 1993).

## ANALYSIS

¶ 7 Ralph's Estate challenges the trial court's grant of summary judgment in favor of Marion on multiple grounds. To begin, it argues that the trial court erred when it determined that a constructive trust was not established in 1966. For purposes of this opinion, we assume, without deciding, that a constructive trust was created when Ralph

---

2. Ralph's Estate argues that the trial court erred by excluding the affidavits of Ralph's children as inadmissible hearsay. On appeal, Ralph's Estate claims that these affidavits are admissible under rule 601(c) of the Utah Rules of Evidence. However, Ralph's Estate does not identify where in the record it preserved this argument, nor does it provide a transcript from the hearing on the motion for summary judgment. Although it directs us to the trial court's ruling and judgment as evidence that the argument was preserved, that ruling and judgment analyzes the affidavits

only with respect to rule 801(d)(2) and rule 804 of the Utah Rules of Evidence. As a result, the issue as to whether the affidavits are admissible under rule 601(c) is not preserved, and we do not consider it. *See 438 Main St. v. Easy Heat, Inc.,* 2004 UT 72, ¶ 51, 99 P.3d 801. Even if the affidavits had been admitted, however, they are unhelpful to Ralph's Estate's claim. Rather, the affidavits confirm that Ralph was aware for many years before his death that Marion had refused to reconvey Ralph's one-third interest in the property.

conveyed his third of the property to Marion in 1966 so that Marion could obtain the second loan. *Cf. Rawlings v. Rawlings*, 2010 UT 52, ¶ 24, 240 P.3d 754 (affirming that "'the forms and varieties of [constructive] trusts ... are practically without limit.'" (omission in original) (quoting *Parks v. Zions First Nat'l Bank*, 673 P.2d 590, 597 (Utah 1983))).

¶ 8 Ralph's Estate's second contention is that the trial court erred by failing to toll the statute of limitations under the discovery rule. An action for breach of a constructive trust is subject to a four-year statute of limitations. *See* Utah Code Ann. § 78B–2–307 (2008) ("An action may be brought within four years: ... (3) for relief not otherwise provided for by law"); *cf. American Tierra Corp. v. City of West Jordan*, 840 P.2d 757, 760 (Utah 1992) ("Frequently, actions in equity are held to come within the scope of the statutory provision that establishes a time limit applicable to all causes of action for which a specific limit is not otherwise provided."). Generally, "a statute of limitations period begins to run upon the happening of the last event necessary to complete the cause of action." *Snow*, 2000 UT 20, ¶ 10, 998 P.2d 262 (internal quotation marks omitted). However, "in certain circumstances, we apply a discovery rule which benefits a plaintiff by operating to toll the period of limitations until the discovery of facts forming the basis for the cause of action." *Id.* (internal quotation marks omitted). "The discovery rule may apply in either of two mutually exclusive settings: if a statutory discovery rule applies or if an equitable discovery rule applies." *Nolan v. Hoopiiaina (In re Hoopiiaina Trust)*, 2006 UT 53, ¶ 35, 144 P.3d 1129. A statutory discovery rule applies when the statute "by its own terms, mandates application of the discovery rule." *See Russell Packard Dev., Inc.*, 2005 UT 14, ¶ 21, 108 P.3d 741. In contrast, the equitable discovery rule will toll a statute of limitations if "a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct," or if "the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant

has prevented the discovery of the cause of action." *Id.* ¶ 25.

¶ 9 Here, the applicable statute of limitations, Utah Code section 78B–2–307, does not mandate by its own terms the application of the discovery rule. *See* Utah Code Ann. § 78B–2–307. As a result, the statutory discovery rule does not apply to the present case. *See Russell Packard Dev., Inc.*, 2005 UT 14, ¶ 21, 108 P.3d 741. There is also no evidence that Ralph's Estate was not aware of its cause of action because of concealment or misleading conduct on the part of Marion. Thus, the concealment version of the equitable discovery rule does not apply to this case. *See id.* ¶ 25. However, we agree with Ralph's Estate that with regard to its claim on the property, the exceptional circumstances version of the equitable discovery rule tolled the statute of limitations claim for a period of time.

¶ 10 To determine when exceptional circumstances warrant the application of the discovery rule, Utah courts "apply a balancing test to weigh 'the hardship imposed on the claimant by the application of the statute of limitations against any prejudice to the defendant resulting from the passage of time.'" *Snow v. Rudd*, 2000 UT 20, ¶ 11, 998 P.2d 262 (quoting *Sevy v. Security Title Co.*, 902 P.2d 629, 636 (Utah 1995)). However, in cases involving claims of trustee misconduct and close familial relationships, the supreme court has found in essence that the balancing test has already been applied and "to not apply the discovery rule would lead to unjust results." *See id.* (citing *Walker v. Walker*, 17 Utah 2d 53, 404 P.2d 253, 257 (1965); *Acott v. Tomlinson*, 9 Utah 2d 71, 337 P.2d 720, 724 (1959)). The court reasoned that the discovery rule is necessary in those situations because "the beneficiary will be less likely to question the motives of the trustee and less likely to sue." *See id.* (citing *Walker*, 404 P.2d at 257). And "[t]herefore, it is appropriate to protect the interests of a beneficiary by applying the discovery rule to toll the statute of limitations until the beneficiary knows or should know of the alleged breach or repudiation." *Id.*

¶ 11 Because Ralph and Marion are brothers, this case involves a close familial relationship, resulting in Ralph being more likely to trust that Marion had Ralph's best interest in mind. Their relationship also made it less likely that Ralph would sue Marion at the first hint of repudiation. *See id.* Furthermore, Ralph had previous experience conveying his share of the property to Marion in trust. In 1950, Ralph conveyed his interest in the property to Marion so that Marion could obtain a loan, and Marion reconveyed Ralph's share to him one year later without incident. Under these circumstances, it was reasonable for Ralph to believe that the same arrangement would govern the transfer of Ralph's interest to Marion in connection with the second loan. These exceptional circumstances tolled the statute of limitations on Ralph's claim against Marion for breach of trust until Ralph knew or should have known that Marion had breached or repudiated that trust agreement.[3] *See id.*

¶ 12 The defense of the statute of limitations is "not available to a trustee as against his beneficiaries until something has occurred to give a clear indication to them that he has repudiated his trust; or the circumstances are such that they must be charged with knowledge of such repudiation." *Walker,* 404 P.2d at 257; *see also Snow,* 2000 UT 20, ¶ 11, 998 P.2d 262 (holding that the statute of limitations for an action alleging breach of a family trust is tolled "until something has occurred to give the beneficiary a 'clear indication' that a breach or repudiation has occurred"). Thus, the question becomes: When, if ever, did Ralph know of Marion's breach or repudiation? The trial court concluded that Ralph should have known in 1980 that Marion had repudiated the trust because Marion did not reconvey the property upon repaying the second loan and did not respond to Ralph's letter proposing that the property

be partitioned into three separate parcels. Ralph's Estate contends that the trial court erred because it weighed the evidence in determining that Marion's failure to respond to Ralph's 1980 letter should have put Ralph on notice of a breach of trust. We need not resolve this issue.

¶ 13 Even assuming that there was not enough uncontested evidence to conclude, as a matter of law, that Ralph should have known that Marion had breached or repudiated the trust in 1980, any remaining doubt on that issue was later eliminated. From 1980 forward, Marion continued to hold title to the property in his name. During this decade, Marion did not even respond to Ralph's request to partition the property into three equal parcels. Certainly, this conduct should have made Ralph at least suspicious that Marion did not intend to honor the trust. In 1990, Marion sent Ralph a letter expressly rejecting Ralph's ten-year-old proposal to divide the property, indicating that Ralph's proposal was "offensive." Instead, Marion offered Ralph ten acres. Where Ralph had conveyed his interest in approximately twenty acres in trust, the offer of only ten acres, over ten years after the purpose of the trust was completed, was a clear breach and repudiation of the trust agreement.

¶ 14 In reaching this conclusion, we consider the supreme court's decision in *Snow v. Rudd,* 2000 UT 20, 998 P.2d 262, instructive. Like Ralph's Estate, the plaintiff in *Snow* argued that summary judgment was precluded on the issue of whether the familial trustee had breached or repudiated the trust, thereby triggering the statute of limitations, because all inferences from the evidence had to be interpreted in favor of the plaintiff as the nonmoving party. *See id.* ¶ 13. The Utah Supreme Court rejected that argument stating, "Even considering these facts in a light most favorable to [the plaintiff], there

---

**3.** Marion argues that in a familial constructive trust it is unworkable to toll the statute of limitations until a clear breach or repudiation "because a constructive trust is an equitable remedy of the court, so no clear trustee-beneficiary relationship exists." Under the unique facts present here, we disagree. Ralph had previously transferred his interest in the property to Marion in trust, and Marion had fulfilled his duties as trustee by reconveying to Ralph after the first loan

transaction. Thus, both parties understood the terms of their arrangement when Ralph conveyed his interest to Marion in connection with the second loan. The fact that neither of them had expressly characterized it as a constructive trust does not diminish the reticence Ralph would have to sue his brother absent a clear breach or repudiation of their agreement. Thus, we agree with Ralph's Estate that the equitable discovery rule is applicable.

can be no doubt that, as a matter of law, she had knowledge ... of all facts necessary to put her on notice to inquire as to whether the sale of the house to her sister breached the trust" over four years prior to filing her suit. *See id.* The *Snow* court explained that the beneficiary need not know all the facts necessary to conclude that the trustee was in breach or had repudiated the trust. *See id.* Similarly, the statute of limitations was triggered when Ralph knew, or through reasonable investigation, could have learned of a breach or repudiation. *See id.* ¶¶ 11, 15. As a matter of law, Ralph had knowledge by at least 1990 "of all facts necessary to put [him] on notice to inquire as to whether" Marion's refusal to reconvey Ralph's interest in the property was a breach or repudiation of the trust. *See id.* ¶ 13. Consequently, the statute of limitations began to run at that time. Ralph's Estate filed this action in 2007, seventeen years after Ralph had sufficient information to know or to inquire about Marion's breach of their agreement with respect to Ralph's interest in the property. We agree with the trial court that the action is barred by the four-year limitations period.

## CONCLUSION

¶ 15 Even if the 1966 transfer created a constructive trust and the statute of limitations was equitably tolled due to the close familial relationship between Ralph and Marion, Ralph should have known that Marion had breached or repudiated the trust well over four years before Ralph's Estate filed this action. As a result, the action is barred by the expiration of the statute of limitations and the trial court was correct in granting summary judgment in favor of Marion. *See id.* ¶¶ 12–13, 16.

¶ 16 Affirmed.

¶ 17 WE CONCUR: JAMES Z. DAVIS, Presiding Judge and MICHELE M. CHRISTIANSEN, Judge.