The TRAVELERS INSURANCE CO., a Connecticut Corporation, Plaintiff and Appellee,

v.

Thomas J. KEARL, an individual; Nanette Kearl, an individual; Timothy Allen, a Personal Representative of the Estate of Jeremy L. Allen, Defendants and Appellees,

and

Lee Warren, on his own behalf and as Personal Representative of the Estate of Lisa Marie Warren, Intervenor and Appellant,

and

Clayton F. Kearl and Nita R. Kearl, individually, and Clayton F. Kearl as Personal Representative of the Estates of R. Trent Kearl and Tobin J. Kearl, Intervenors and Appellants.

No. 940293–CA.

Court of Appeals of Utah.

May 25, 1995.

Krause, Heather Noble (argued), Spence, Moriarty & Schuster, Jackson, WY, for appellant Warren.

Paul S. Felt, John A. Adams (argued), Mark M. Bettilyon, Ray, Quinney & Nebeker, Salt Lake City, for appellee Travelers Insurance.

Charles A. Schultz, Salt Lake City, for appellants Clayton and Nita Kearl.

Robert D. Tingey, Winder & Haslam, P.C., Salt Lake City, for appellees Thomas and Nanette Kearl.

Before BILLINGS, JACKSON and WILKINS, JJ.

## OPINION

WILKINS, Judge:

The intervenors in this case, representing the estates of Lisa Marie Warren and Trent and Tobin Kearl, appeal the trial court's grant of summary judgment in favor of The Travelers Insurance Company (Travelers). The trial court ruled that, as a matter of law, the automobile in question was not insured under the Travelers policy issued to Thomas and Nanette Kearl. We reverse the summary judgment as to the intervenors' estoppel argument and remand to the trial court for further proceedings.

## BACKGROUND

Because we are reviewing a grant of summary judgment, we recite the facts in the light most favorable to the intervenors, the party opposing the summary judgment. *See State Bank v. Troy Hygro Sys., Inc.,* 262 Utah Adv.Rep. 32, 32–33 (Utah App.1995).

Thomas Kearl purchased an Isuzu Impulse from a Rick Warner dealership in Salt Lake City on June 3, 1987. Mr. Kearl took possession of the Impulse about this time but did not register title in his name and did not obtain permanent license plates. Mr. Kearl and his wife drove the Impulse for a few months thereafter; however, the Kearls did not have the Impulse added to their insurance policy until September 10, 1987.[1]

Allen K. Young, Young & Kester, Springville, Edward P. Moriarity, Robert A.

---

1. The Kearls' Travelers policy # 914626327 101 2 was in effect from May 8, 1987 to November 8, 1987.

In October of that year, the Kearls placed the Impulse on consignment with the Rick Warner dealership in an attempt to resell the vehicle. At that time, the Kearls terminated their insurance coverage of the Impulse.

In June of 1988, the Kearls' teenage nephew, Trent, approached them about the possibility of purchasing or using the Impulse for a period of time. Trent and Mr. Kearl orally agreed that Trent would pay his uncle $100 every two weeks for the remaining life of the Kearls' loan on the Impulse. The parties dispute whether this transaction equated to a sale of the vehicle or a rental, and if a sale, at what point the sale would be completed and Trent would become the owner.

Trent subsequently took possession of the Impulse, removing it from the Rick Warner lot that same month. A short time later, on June 23, Trent processed the paperwork to transfer title into his uncle's name.

On July 21, 1988, Mr. Kearl telephoned Travelers' agent, Don Smith Insurance Agency, for the purpose of adding the Impulse to his current Travelers Policy.[2] Mr. Kearl intended to have coverage for the Impulse begin immediately because he was going out of town and he also knew that Trent was taking the Impulse on a trip out of town. Mr. Kearl spoke with Debbie Smith at the insurance agency. Mr. Kearl told her that he needed to add another vehicle to his Travelers policy, but that he would have to get back to her with more specific information about the vehicle.

Mr. Kearl had previously added vehicles to his policy by making a phone call to the Don Smith Insurance Agency and telling them that he had a vehicle to add. Mr. Kearl often did not have the needed information when he made the initial call to add a vehicle to his insurance; instead, he would give them the remaining required information at a later date. Nevertheless, the added vehicle would always be covered as of the date of the initial call. Mr. Kearl believed that he was going through the same process this time and that coverage on the added vehicle would be retroactive to the date of the call. Ms. Smith

did not tell Mr. Kearl that coverage would not begin until he gave her all the necessary information. In reliance on his belief that insurance coverage on the Impulse had been initiated, Mr. Kearl took no further steps prior to July 31, 1988.

On July 31, 1988, the Impulse, while in Trent's possession, collided with a tractor trailer in Lincoln County, Wyoming, killing Trent; his brother, Tobin Kearl; Jeremy Allen, who was driving the Impulse at the time; and Lisa Marie Warren.

The representatives of the estates of Lisa Marie Warren and Trent and Tobin Kearl brought a wrongful death action against various parties. Travelers, in turn, brought this action to determine whether the Impulse was insured under the Travelers policy issued to the Kearls. The representatives of the estates intervened to protect their interests.

Travelers filed a motion for summary judgment, asserting that, as a matter of law, the Impulse was not insured under the Travelers policy issued to Thomas and Nanette Kearl. The trial court granted Travelers' motion. The intervenors appeal.

## ANALYSIS

■■ The intervenors assert that the trial court erred in granting summary judgment because genuine issues of material fact exist with respect to the intervenors' claims that (1) Travelers should be estopped from denying coverage of the Impulse and (2) the Impulse qualified as a newly-acquired vehicle under the Kearls' insurance policy. Whether Travelers is entitled to summary judgment is a question of law reviewed for correctness. *See Records v. Briggs,* 887 P.2d 864, 871 (Utah App.1994). We do not defer to the trial court's conclusion that the material facts are undisputed nor to its legal conclusions based on those facts. *Oquirrh Assocs. v. First Nat'l Leasing Co.,* 888 P.2d 659, 662 (Utah App.1994). In addition, we will view the properly submitted evidence, and the facts and inferences thereby supported, in a light most favorable to the intervenors, the

2. The Kearls' Travelers policy # 916900258 101 2 was in effect from May 16, 1988 to November 16, 1988.

parties opposing summary judgment. *See, e.g., State Bank v. Troy Hygro Sys., Inc.,* 262 Utah Adv.Rep. 32, 33 (Utah App.1995). If we find a material factual issue, we will reverse the grant of summary judgment. *Records,* 887 P.2d at 871.

## I. Equitable Estoppel

■ The intervenors claim that Travelers should be estopped from denying coverage of the Impulse under the Kearls' policy. They argue on appeal that they have presented evidence to support each of the required elements of estoppel, thereby precluding the trial court from granting summary judgment in favor of Travelers.

The trial court disagreed, concluding that the intervenors had not provided the court with the type of factual evidence needed to invoke estoppel. In reaching this conclusion, the trial court indicated that "there was no evidence that the course of dealing between Thomas Kearl and Smith Agency ever involved circumstances similar to the facts currently before the Court. . . . All evidence of a previous course of dealing was therefore materially different and insufficient to form the basis of an estoppel argument."

The trial court's otherwise well-reasoned analysis went off track when the court made a presumption concerning ownership of the vehicle. If Trent, and not Mr. Kearl, actually owned the Impulse at the time Mr. Kearl tried to insure it, then the trial court's analysis would be correct. However, the trial court erred in considering as undisputed facts (1) that "Thomas Kearl relinquished ownership of the Impulse, by selling the car to Trent Kearl," (2) that "[a]t the time Thomas Kearl purportedly requested coverage of Deborah Smith, he was requesting coverage on an automobile which he no longer owned," and (3) that "[p]rior to [July 21, 1988] Thomas and Nanette Kearl had never requested insurance coverage on a car they did not own and control," as they were attempting to do this time.

While Mr. Kearl indicated at his deposition that he believed he had sold the car to Trent, recorded statements by Mr. Kearl to insurance agent John Parr contradict his deposition testimony:

Kearl: . . . About a month ago, we decided that we would get the car, and because we were paying for the car, we might as well use the car so we got it and Trent Kearl was *going to buy* it from me.

. . . .

Parr: And you were the owner at the time [of the accident]?

Kearl: Of the vehicle, *yes I was.*

(Emphasis added.) These recorded statements were included in deposition exhibit # 17 and were submitted to the trial court. This evidence suggests that Mr. Kearl was the owner of the Impulse at the time of the accident and that either Trent was going to purchase the Impulse at some future date or else he was in the process of purchasing it, but had not yet completed the requisite payments to claim ownership. In light of the conflicting evidence, we conclude that ownership of the Impulse is disputed. Furthermore, this dispute creates a material factual issue because the trial court could not have granted summary judgement in favor of Travelers unless the ownership issue was undisputed. The intervenors have otherwise presented sufficient evidence to create material issues of fact concerning each of the required elements of estoppel.

The necessary elements of equitable estoppel are:

"(1) a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted; (2) reasonable action or inaction by the other party taken on the basis of the first party's statement, admission, act, or failure to act; and (3) injury to the second party that would result from allowing the first party to contradict or repudiate such statement, admission, act, or failure to act."

*Trolley Square Assocs. v. Nielson,* 886 P.2d 61, 65 (Utah App.1994) (quoting *Holland v. Career Serv. Review Bd.,* 856 P.2d 678, 682 (Utah App.1993)).

The intervenors have presented evidence of a prior course of dealing between the Kearls and the Don Smith Insurance Agency. These prior dealings form the basis for the intervenors' estoppel argument. At his deposition, Mr. Kearl testified that he had pre-

viously added vehicles to his policy by making a phone call to the Don Smith Insurance Agency and telling someone at the agency that he had a vehicle to add, that he often did not have the needed information, and that he would give them the remaining information at a later date. Even so, Mr. Kearl testified that the added vehicles would always be covered as of the date of that initial call.

Furthermore, Travelers admits that Mr. Kearl had previously insured the Impulse approximately three months after its initial acquisition in June 1987. Mr. Kearl claims to have previously added all of his new vehicles in the same manner. Thus, viewing the evidence in the light most favorable to the intervenors, we find evidence to suggest that Mr. Kearl had previously added a vehicle that would not qualify as "newly acquired" under the insurance policy simply by calling, giving less than the needed information, and receiving coverage as of that date. This evidence at least creates an issue of material fact.

Accordingly, this prior course of dealing between Mr. Kearl and the insurance agency provides an adequate foundation upon which the facts of this case could establish the intervenors' estoppel argument. The intervenors have presented evidence that Ms. Smith failed to indicate to Mr. Kearl in any way that the vehicle he wanted to add to his policy would not qualify for coverage until the agency received all the necessary information. In light of the prior dealings, this failure to act could meet the first element of estoppel. The intervenors have further presented evidence that Mr. Kearl, based upon the prior dealings, believed he had taken the proper steps to initiate insurance coverage of the Impulse and therefore did not immediately call back to provide Ms. Smith with the necessary information. This inaction by Mr. Kearl could be viewed as the result of the insurance agency's failure to properly inform Mr. Kearl that coverage of the vehicle would not begin retroactively to the date of this first call. Finally, Travelers now claims that the Impulse was not insured from the date of that call. In light of the prior dealings between the parties and Ms. Smith's failure to indicate that the procedures would materially differ on this occasion, the denial of insurance coverage amounts to an injury sufficient to meet the last element of estoppel.

Because evidence properly before the trial court supports each of the elements of equitable estoppel, we find genuine issues of material fact, thereby precluding the entry of summary judgment against the intervenors. In addition, while Travelers has argued that Mr. Kearl's conduct could not equate to *reasonable* reliance, that question is one of fact to be determined at trial. *See Berkeley Bank for Coops. v. Meibos,* 607 P.2d 798, 801 (Utah 1980); *Conder v. Williams & Assocs.,* 739 P.2d 634, 638 (Utah App.1987). We therefore reverse the trial court's grant of summary judgment against the intervenors and remand for further proceedings on the issues pertaining to equitable estoppel.

## II. "Newly Acquired Vehicle" Clause

■ The intervenors also argue that the trial court erred in ruling that the Impulse could not qualify for automatic coverage as a newly-acquired vehicle under the Kearls' insurance policy with Travelers. A clause in the insurance contract allows for automatic coverage of a vehicle if (1) the vehicle was acquired during the policy period and (2) the insured asked Travelers to insure it within 30 days after becoming the owner.

The intervenors rely on the case of *Matlock v. Government Employees Insurance Co.,* 546 P.2d 903 (Utah 1976), for the proposition that "acquisition" of a vehicle occurs on the date that the buyer takes possession of the vehicle, triggering a need for insurance coverage. Nevertheless, the present situation differs from the one in *Matlock.* In this case, the Kearls had previously taken possession of the Impulse in June 1987, driving the Impulse at that time and even insuring it. The Kearls clearly "acquired" the Impulse at that time. Even though they relinquished possession of the Impulse when they placed it on consignment at the Rick Warner lot, they did not sell the Impulse or otherwise part with ownership. Thus, driving the Impulse off the Rick Warner lot a second time did not amount to a new acquisition of that vehicle.

Extension of the *Matlock* principle is not warranted under the facts of this case, even viewing those facts in a light most favorable to the intervenors. The trial court did not err in ruling, as a matter of law, that the Impulse could not qualify as a newly-acquired vehicle under the Kearls' policy.

## CONCLUSION

The evidence before the trial court presents genuine issues of material fact regarding ownership of the Impulse, the prior dealings of Mr. Kearl and the Don Smith Insurance Agency, and each of the necessary elements of equitable estoppel. As a result, the trial court erred in concluding that the intervenors had not presented sufficient evidence to invoke estoppel. However, the trial court correctly held that the Impulse could not qualify as a newly-acquired vehicle under the Kearls' policy.

Accordingly, the trial court erred in granting summary judgment in favor of Travelers. We reverse the summary judgment as to the intervenors' estoppel argument and remand for further proceedings.

BILLINGS and JACKSON, JJ., concur.