**2021 UT 34**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

KEN M. FITZGERALD and FIVE C.J. PROPERTIES, LLC,
*Appellants*,

v.

SPEARHEAD INVESTMENTS, LLC and ALPINE EAST INVESTORS, LLC,
*Appellees*.[1]

No. 20190644
Heard February 10, 2021
Filed July 22, 2021

On Interlocutory Appeal

Fourth District, Utah County
The Honorable Thomas Low
No. 170401272

Attorneys:

Bryan H. Booth, Salt Lake City, for appellants

Thomas W. Seiler, Jared L. Anderson, Provo, for appellee

JUSTICE HIMONAS authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE, JUSTICE
PEARCE, and JUSTICE PETERSEN joined.

JUSTICE HIMONAS, opinion of the Court:

## INTRODUCTION

¶1     The Dutch have a saying that "promises make debt, and debt makes promises." Today, we expand on this commercial proverb to address what the law requires when a promise to pay is not kept and the limitations period has run. Specifically, we consider whether the equitable estoppel doctrine offers a discrete basis for tolling a statute of limitations in Utah. We hold that it does.

---

[1] Only Alpine East Investors, LLC is before us as an appellee.

¶2    This case comes to us as an interlocutory appeal from the denial of Ken Fitzgerald and Five C.J. Properties, LLC's (collectively, Owners) motion for summary judgment on their claim for declaratory judgment/quiet title with respect to the subject property (the Property). Here are the essential facts: Owners executed a trust deed note with Alpine East Investors, LLC for the Property, promising to pay the note in full within two years. They didn't. After the foreclosure limitations period had expired, and despite numerous promises made—and subsequently broken—to pay the debt owed, Owners sought two results from the district court: (1) to enjoin Alpine East from foreclosing its trust deed on the Property, and (2) a determination that Alpine East had no valid interest in the Property. Alpine East responded by invoking the doctrine of equitable estoppel, which would toll the limitations period and estop Owners from using the statute of limitations to quiet title. Owners, however, argued before the district court, and now on appeal to us, that equitable estoppel is not a stand-alone basis for defeating a statute of limitations defense because this court has incorporated it into the equitable discovery doctrine. If Owners are right, then Alpine East is unable to toll the foreclosure limitations period because it cannot satisfy the elements of equitable discovery.

¶3    Our response to Owners' view of equitable estoppel is a hard no. To reach our conclusion, we juxtapose equitable estoppel with equitable discovery and find that, though similar in name and function, they're separate equitable doctrines that are invoked in distinct circumstances. As such, we hold that equitable estoppel may be invoked as a stand-alone basis for tolling a statute of limitations. But we clarify that a mere promise to make good on a debt, without more, is insufficient to toll a limitations period under the equitable estoppel doctrine, even if a party has relied upon that promise. Still, we do not address equitable estoppel's specific application to this case—we leave that to the district court as it is better situated to make the determination in the first instance. Accordingly, we vacate the district court's interlocutory order denying summary judgment and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶4    In 2008, Owners executed and made payable to Alpine East a trust deed note for the Property. The parties also executed and recorded a trust deed to secure the note against the Property.

The note was due two years later. When the due date had passed, Owners had yet to make a payment toward the note.[2]

¶5 Pursuant to Utah Code section 70A-3-118(1), Alpine East had a limitations period of six years to file an action to foreclose the trust deed or record a notice of default on the property. Seven days before that limitations period expired, Brian Hansen, the manager of Alpine East, spoke by telephone with Fitzgerald regarding payment of the note. During the nearly hour-long conversation, Hansen specifically mentioned to Fitzgerald the possibility of foreclosing on the Property. Fitzgerald did not dispute the amount or validity of the debt, pleaded with Hansen not to foreclose, and gave assurances of forthcoming payment or, alternatively, conversion of the note into equity in the company that would develop the Property. Fitzgerald pitched that Alpine East could earn more under this alternative proposal than what it was owed under the note. None of Fitzgerald's assurances were committed to writing. Hansen now alleges that he did not initiate a foreclosure of the Property before the limitations period had run because of these assurances.

¶6 Eight days after the presumed statute of limitations had expired, Hansen again spoke over the phone with Fitzgerald for nearly an hour. During this call, Fitzgerald recommitted to either make payment under the note or convert the debt into equity in one of his development companies. Fitzgerald also agreed to "work something out" to extend the note. When Hansen asked Fitzgerald to send an email confirming their plan to extend the note, Fitzgerald indicated that he would not sign anything until the State of Utah finished its then-current criminal investigation of his father and family.

¶7 Over a year later and well after the presumed limitations period had expired, Owners sought a court determination that the note and trust deed were unenforceable and that Alpine East had no interest in the property. Shortly thereafter, Owners filed a motion for summary judgment against Alpine East, arguing that the statute of limitations had expired and that Alpine East was therefore barred from foreclosing the trust deed. The district court

---

[2] As this matter is before us on an appeal from a motion for summary judgment, we recite the facts and indulge reasonable inferences in the light most favorable to Alpine East, the nonmoving party. *Herland v. Izatt*, 2015 UT 30, ¶ 9, 345 P.3d 661.

granted the motion, declaring that the limitations period for enforcing the trust deed had expired before Alpine East recorded a notice of default or filed an action to foreclose. The district court also entered a judgment against Alpine East, enjoining them from foreclosing on the trust deed or otherwise enforcing the note. With both orders, the court concluded that Alpine East had no right, title, or interest in the Property.

¶8 Months later, however, in a separate case with related facts and parties, the Utah Court of Appeals held that dilatory tactics to stave off foreclosure until a limitations period had expired could toll the limitations period under the doctrine of equitable estoppel. *Jeppesen v. Bank of Utah*, 2018 UT App 234, ¶ 33, 438 P.3d 81. In so holding, the court of appeals delineated between equitable estoppel and equitable discovery. *Id.* ¶¶ 30, 32. Equitable estoppel, the court explained, tolls a limitations period when the plaintiff had knowledge of the cause of action but was induced by the other party to delay the action until after the period had run; equitable discovery tolls a statute of limitations when a plaintiff does not discover the cause of action because of the defendant's concealment. *Id.*

¶9 Based upon the holding in *Jeppesen* and following the district court's subsequent amended judgment granting attorney's fees to appellants, Alpine East filed a Rule 59 motion to revise the district court's prior ruling. Alpine East argued Owners had made promises that raised issues of material fact that precluded summary judgment under the doctrine of equitable estoppel. Relying on *Jeppesen*, the court granted the motion because it found a question of fact as to "whether Fitzgerald made promises to pay or to convert the debt which induced Alpine East not to foreclose within the statute of limitations."

¶10 Owners petitioned for permission to take an interlocutory appeal of the district court's ruling. We granted the appeal to consider whether the doctrine of equitable estoppel has been incorporated into the equitable discovery doctrine. We have jurisdiction under Utah Code section 78A-3-102(3)(j).

## STANDARD OF REVIEW

¶11 On interlocutory appeal, we review grants and denials of summary judgment for correctness. *Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶ 19, 116 P.3d 323. "Summary judgment is only appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Herland*

*v. Izatt*, 2015 UT 30, ¶ 9, 345 P.3d 661 (citing UTAH R. CIV. P. 56(c)). We view the facts and indulge reasonable inferences in the light most favorable to Alpine East, the nonmoving party. *Id.*

## ANALYSIS

¶12 Our analysis clarifies the difference between equitable estoppel and equitable discovery. Although similar in name and function, these equitable doctrines each apply in distinct circumstances.

¶13 Owners argue that *Jeppesen v. Bank of Utah*, 2018 UT App 234, 438 P.3d 81, which the district court relied on in granting Alpine East's Rule 59 Motion, is bad law because the doctrine of equitable estoppel, as applied to statutes of limitations, has been incorporated into the concealment prong of the equitable discovery doctrine. For authority, Owners point to this court's statement in *Russell Packard Development, Inc. v. Carson* that equitable discovery has its "genesis in estoppel" and is "essentially a claim of equitable estoppel." 2005 UT 14, ¶ 26, 108 P.3d 741 (citation omitted). Thus, they assert, Alpine East must make the initial showing required under equitable discovery: that it did not know nor reasonably should it have known of its cause of action in time to comply with the limitations period because of the defendant's concealment. So, as Owners understand it, a party that knew the facts supporting its claim at the time the statute of limitations began to run—like Alpine East with its foreclosure claim—would never have the limitations period tolled.

¶14 Alpine East, on the other hand, argues that *Jeppesen* was correct to hold that equitable estoppel is an independent basis for tolling a statute of limitations. Thus, a party need not make an initial showing that it did not know the facts underlying the cause of action. Accordingly, Alpine East asserts, a party who had knowledge of the cause of action but was reasonably induced by the debtor to delay the action until after the limitations period may use the doctrine of equitable estoppel to toll the period.

¶15 We agree with Alpine East and the *Jeppeson* holding. In explaining our conclusion, we first address the difference between the two doctrines. We then use this occasion to clarify that a mere promise to pay, without more, even though relied upon by a party, is insufficient to toll a statute of limitations under the doctrine of equitable estoppel. Ultimately, we vacate the district court's interlocutory order granting Alpine East's Rule 59 Motion,

and remand for further proceedings not inconsistent with this opinion.

I.

*A. Equitable Estoppel vs. Equitable Tolling*

¶16 Though equitable estoppel and equitable discovery both operate to toll statutes of limitations, they are distinct doctrines with distinct applications. We clarify that equitable estoppel is "invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay in bringing [suit]," and equitable discovery is "invoked in cases where the plaintiff is ignorant of his cause of action because of the defendant's fraudulent concealment."[3] *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 802 (2d Cir. 2014) (citation omitted).[4]

---

[3] The equitable discovery doctrine may be invoked in two situations: (1) where the plaintiff was unaware of the cause of action due to the defendant's fraudulent concealment (the "concealment prong"), and (2) when exceptional circumstances so require, regardless of any wrongdoing by the defendant. *See Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 25, 108 P.3d 741. This case does not address the exceptional circumstances prong. As such, and for the ease of the reader, all references to "equitable discovery" in this opinion refer to the concealment prong.

[4] For our purposes, *Ellul* uses the term "equitable tolling" synonymously with "equitable discovery."

We note that while some jurisdictions, such as the Second Circuit, have used equitable discovery and equitable tolling interchangeably, other jurisdictions consider equitable tolling a narrow but independent doctrine. *See, e.g.*, *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 164 (2013) (Sotomayor, J., concurring) (stating that equitable tolling applies when a party is unaware of a cause of action due to "circumstances outside both parties' control"). Utah courts have split the difference and viewed equitable tolling as only part of the standard equitable discovery analysis. *See Grynberg v. Questar Pipeline Co.*, 2003 UT 8, ¶ 65, 70 P.3d 41 ("To the extent that Utah subscribes to the principle of equitable tolling, it has been developed almost exclusively through application of the discovery rule to claims that were not or could not have been discovered prior to the running of the statute of limitations.").

Yet we also note that both doctrines require an "evaluation of the reasonableness of a plaintiff's conduct in light of the defendant's fraudulent or misleading conduct." *See Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 26, 108 P.3d 741.

¶17 The equitable estoppel doctrine comes from the "maxim that no man may take advantage of his own wrong." *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232 (1959). This maxim is deeply rooted in American jurisprudence, *id.* at 232, and guides our statute of limitations tolling jurisprudence in Utah. *See, e.g., Rice v. Granite Sch. Dist.*, 456 P.2d 159, 163 (Utah 1969). We apply the equitable doctrines when we recognize that a defendant has unjustly "lull[ed] an adversary into a false sense of security thereby subjecting his claim to the bar of limitations" and is then

---

In *Russell Packard*, this court limited the application of equitable discovery to two circumstances. *See supra* ¶ 16 n.3. We have seemed to acknowledge that the second circumstance—the "unusual circumstances" prong—serves the purpose of equitable tolling. *See Beaver Cnty. v. Prop. Tax Div.*, 2006 UT 6, ¶¶ 25–26, 128 P.3d 1187. The inclusion of exceptional circumstances in the equitable discovery analysis may have made a separate equitable tolling analysis unnecessary. *Estes v. Tibbs*, 1999 UT 52, ¶ 7, 979 P.2d 823 ("Every case in which we have addressed a 'special circumstances exception' has dealt with tolling a statute of limitations through application of the discovery rule.").

Although there is no nationwide consensus, Utah precedent is closer to the Eighth Circuit than it is to the Second Circuit (which includes concealment as part of equitable tolling). This view of tolling as a sub-category of the discovery rule is consistent with the Eighth Circuit's description of equitable tolling in *Bell v. Fowler* because equitable discovery in Utah applies to one circumstance where defendant misconduct is required (concealment), and one where it is not required (exceptional circumstance). *See* 99 F.3d 262, 266 n.2 (8th Cir. 1996).

Notwithstanding the distinction among "equitable tolling" and "equitable discovery" in Utah, we cite to jurisdictions in which the terms are used interchangeably in this opinion and make note accordingly. Further, this opinion merely clarifies that equitable discovery is distinct from equitable estoppel. This opinion changes nothing regarding the doctrine of equitable discovery. *See generally, e.g., Russell Packard*, 2005 UT 14; *Berneau v. Martino*, 2009 UT 87, 223 P.3d 1128.

"heard to plead that very delay as a defense to the action when brought." *Id.* And we see no reason to stray from this guiding principle today even though Alpine East was aware of the facts underlying its cause of action before the limitations period had run.[5] We further acknowledge that concealment is not the only way a defendant may induce an adversary to postpone legal action, and so to forsake this doctrine, even absent concealment, would be to allow parties to take advantage of their own wrong. Obviously, we will not go there.

¶18  We begin with equitable estoppel. The doctrine operates to toll a statute of limitations if a plaintiff can establish three elements:

> (1) a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted; (2) reasonable action or inaction by the other party taken on the basis of the first party's statement, admission, act, or failure to act; and (3) injury to the second party that would result from allowing the first party to contradict or repudiate such statement, admission, act, or failure to act.

*Jeppesen v. Bank of Utah*, 2018 UT App 234, ¶ 33, 438 P.3d 81 (quoting *Travelers Ins. Co. v. Kearl*, 896 P.2d 644, 647 (Utah Ct. App. 1995)).

¶19 The most important inference we draw from these elements for our purposes today is that equitable estoppel may be invoked even when the plaintiff is aware of the facts giving rise to a cause of action. This principle stands in stark contrast to the equitable discovery doctrine, in which the plaintiff must show he was *not* aware of the facts giving rise to a cause of action. *Ellul*, 774 F.3d at 802. Indeed, in *Rice*, this court made no requirement that the plaintiff make an initial showing that she did not know nor reasonably should she have known the facts underlying her cause of action in order to equitably estop the defendant from invoking a statute of limitations defense. *Compare Rice*, 456 P.2d at

---

[5] We do not, however, intend to undermine the important purposes served by statutes of limitations, which include "preventing unfair litigation such as 'surprise or ambush claims, fictitious and fraudulent claims, and stale claims.'" *Davis v. Provo City Corp.*, 2008 UT 59, ¶ 27, 193 P.3d 86 (quoting *Vigos v. Mountainland Builders, Inc.*, 2000 UT 2, ¶ 22, 993 P.2d 207).

163, *with Berneau v. Martino*, 2009 UT 87, ¶ 23, 223 P.3d 1128 (stating that "the plaintiff must make an initial showing that he did not know nor should have reasonably known the facts underlying the cause of action in time to reasonably comply with the limitations period" in order to invoke the equitable *discovery* rule). This is because equitable estoppel merely requires that a "party has been induced to refrain from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss." *Rice*, 456 P.2d at 162 (quoting *Benner v. Indus. Accident Comm'n*, 159 P.2d 24, 26 (Cal. 1945)). Thus, equitable estoppel is "[u]nlike equitable tolling, which is invoked in cases where the plaintiff is ignorant of his cause of action because of the defendant's fraudulent concealment." *Ellul*, 774 F.3d at 802 (citation omitted).

¶20 We are not alone in recognizing equitable estoppel as a discrete doctrine in the statute-of-limitations milieu. At least six United States Circuit Courts of Appeals have recognized that equitable estoppel is distinct from equitable discovery and doesn't require a plaintiff to be unaware of the facts underlying his cause of action. *See Ellul*, 774 F.3d at 802; *Ramirez-Carlo v. United States*, 496 F.3d 41, 48 (1st Cir. 2007) ("Equitable tolling applies when the plaintiff is unaware of the facts underlying his cause of action, while equitable estoppel applies when a plaintiff who knows of his cause of action reasonably relies on the defendant's conduct or statements in failing to bring suit." (citations omitted));[6] *Bell v. Fowler*, 99 F.3d 262, 266 n.2 (8th Cir. 1996) ("[E]quitable tolling is appropriate when the plaintiff, despite all due diligence, is unable to obtain vital information bearing on the existence of his claim. . . . Equitable estoppel presupposes that the plaintiff knows of the facts underlying the cause of action but delayed filing suit because of the defendant's conduct." (citation omitted) (internal

---

[6] The First Circuit appears to use the term "equitable tolling" in a similar manner to our use of "equitable discovery"—both require that the plaintiff be unaware of their cause of action while "equitable estoppel" requires no such lack of knowledge. *See Ramirez-Carlo*, 496 F.3d at 48 n.3 ("The doctrine of equitable tolling suspends the running of the statute of limitations if a plaintiff, in the exercise of reasonable diligence, could not have discovered information essential to the suit." (quoting *González v. United States*, 284 F.3d 281, 291 (1st Cir. 2002))).

quotation marks omitted));[7] *Stitt v. Williams*, 919 F.2d 516, 522 (9th Cir. 1990) ("[T]he better reasoning states that equitable tolling applies when the plaintiff is unaware of his cause of action, while equitable estoppel applies when a plaintiff who knows of his cause of action reasonably relies on the defendant's statements or conduct in failing to bring suit.");[8] *Cook v. Deltona Corp.*, 753 F.2d 1552, 1563 (11th Cir. 1985) ("'Equitable estoppel arises where the parties recognize the basis for suit, but the wrongdoer prevails upon the other to forego enforcing his right until the statutory time has lapsed. The doctrine of equitable tolling, on the other hand, is grounded in the fraudulent concealment of harm which gives rise to the right to sue.'" (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1043 n.7 (10th Cir. 1980));[9] *Aldrich*, 627 F.2d at 1043 (same).

¶21 These crucial differences notwithstanding, equitable estoppel and equitable discovery both share the need to "evaluat[e] . . . the reasonableness of a plaintiff's conduct in light of the defendant's fraudulent or misleading conduct." *Russell Packard*, 2005 UT 14, ¶ 26. For example, equitable estoppel requires "*reasonable* action or inaction by the other party taken on the basis of the first party's statement, admission, act, or failure to act," *Jeppesen*, 2018 UT App 234, ¶ 33 (emphasis added) (citation omitted), and equitable discovery requires that "the plaintiff neither knew nor *reasonably* should have known of the facts underlying his or her cause of action" or that "a *reasonably* diligent

---

[7] The Eighth Circuit does differentiate between equitable tolling and equitable discovery. *See supra* ¶ 19 n.5. Nevertheless, like the First Circuit, the Eighth Circuit applies equitable tolling to plaintiffs who were unaware of their cause of action while "[e]quitable estoppel presupposes that the plaintiff knows of the facts underlying the cause of action." *Bell*, 99 F.3d at 266 n.2.

[8] The Ninth Circuit also applies equitable tolling "when the plaintiff is unaware of his cause of action, while equitable estoppel applies when a plaintiff . . . knows of his cause of action." *Stitt*, 919 F.2d at 522.

[9] The Eleventh Circuit appears to use equitable tolling synonymously with our equitable discovery concealment prong. As with the cases above, equitable tolling in the Eleventh Circuit requires the plaintiff to be unaware of the cause of action. *See Cook*, 753 F.2d at 1563.

plaintiff may have delayed in filing his or her complaint." *Russell Packard*, 2005 UT 14, ¶ 44 (emphases added).

¶22 It was in the context of the two doctrines' commonality in evaluating the reasonableness of a plaintiff's conduct that the *Russell Packard* court noted that equitable discovery has its "genesis in estoppel" and is "essentially a claim of equitable estoppel." *Id.* ¶ 26. Owners claim these statements in *Russell Packard* effectively merged equitable estoppel into the concealment prong of equitable discovery. Not so. We never said or meant that equitable discovery subsumes equitable estoppel. Rather, we were merely highlighting a similarity between the doctrines, not conflating them. Indeed, we mentioned equitable estoppel as a general principle to illustrate that our law seeks to prevent defendants from unjustly relying on a statute of limitations; we did not go into further detail as to equitable estoppel's own prima facie elements. And, ultimately and regardless, these two sentences of dicta are insufficient to defeat established case law.

¶23 Simply put, the doctrines are distinct. Equitable discovery may be invoked in response to a statute of limitations defense when the plaintiff was unaware of the facts underlying a cause of action because of the defendant's fraudulent concealment (absent exceptional circumstances, *see supra* ¶ 16 n.3). Equitable estoppel, however, doesn't require the plaintiff to be unaware of the facts underlying a cause of action. If we were to require this, then defendants could use dilatory tactics to stave off an action until after a limitations period expired and then turn around and use the statute of limitations as a defense. We will not allow a party to take advantage of their own wrong.

*B. A Mere Promise to Pay is Insufficient to Invoke the Doctrine of Equitable Estoppel*

¶24 Having clarified the distinction between equitable estoppel and equitable discovery, we now shift our focus. Though we've established that equitable estoppel may be invoked even when the plaintiff is aware of a cause of action, the doctrine has its own limitations. Today we take the opportunity to clarify one of those limitations—specifically, what it means for a "statement, admission, act, or failure to act" to be "inconsistent with a claim later asserted." *Jeppesen*, 2018 UT App 234, ¶ 33 (citation omitted). We clarify that a mere promise to pay, without more, is categorically insufficient to be considered "inconsistent with a claim later asserted" and, thus, insufficient to invoke equitable estoppel to toll a limitations period.

¶25 The "inconsistent with a claim later asserted" language, as articulated in *Jeppesen*, requires clarification. While we do not provide a definitive list of "statement[s], admission[s], act[s], or failure[s] to act" that are categorically "inconsistent with a claim later asserted"—future cases will afford us the opportunity to do so—we identify that mere promises to pay, without more, are excluded from that list. *See id*. (citation omitted). We borrow this language from an American Law Report, *see* Allan E. Korpela, *Promises to Settle or Perform as Estopping Reliance on Statute of Limitations*, 44 A.L.R.3d 482, 488 (1972) (stating that "a mere promise by a defendant to pay, without more, even though relied upon by the plaintiffs, does not justify invoking the doctrine of equitable estoppel"), and are supported in our determination by the reasonableness element of the equitable estoppel test and by persuasive holdings in sister jurisdictions.

¶26 We do not pretend to possess the foresight or imagination to list every "statement, admission, act, or failure to act" that is "inconsistent with a claim later asserted," but we are comfortable drawing a line here. In a debtor-creditor relationship, the debtor has made an *initial* promise to pay before the statute of limitations runs. This initial promise to pay alone is insufficient to estop the defendant from asserting a statute of limitations defense—if it were sufficient, the equitable estoppel exception would swallow the statute of limitations defense. Put another way, if the initial promise by a debtor to pay was sufficient to invoke the equitable estoppel doctrine, all creditors would be eligible to estop a statute of limitations defense upon the establishment of the debtor-creditor relationship, thus rendering the defense (and its exceptions) useless in this context. And given the important goals served by statutes of limitations, such as preventing surprise, fictitious, or fraudulent claims and stale claims that are difficult to prosecute because of lost evidence, memories, or witnesses, *Davis v. Provo City Corp.*, 2008 UT 59, ¶ 27, 193 P.3d 86, we are not willing to render either the defense or its exception meaningless. In other words, we do not find that a debtor's initial promise to pay is a "statement, admission, act, or failure to act" that is "inconsistent with a claim later asserted."

¶27 The equitable estoppel exception to the statute of limitations defense concerns "statement[s], admission[s], act[s], or failure[s] to act" that are made *subsequent* to the initial promise to pay. And we find that a mere promise to pay, without more, is merely a restatement of a debtor's initial promise to pay and does not indicate changed circumstances following the initial promise. A mere reiteration of a preexisting promise, much like the initial promise, cannot be sufficient to toll a limitations period because it would obviate the purpose of the statute of limitations defense and its equitable estoppel exception. As such, a mere promise to pay, without more, even though relied upon by the plaintiff, is not "inconsistent with a claim later asserted."

¶28   And while our focus is primarily on the first prong of the equitable estoppel test, the second prong provides additional support to our conclusion. This prong requires "reasonable action or inaction by the other party taken on the basis of the first party's statement, admission, act, or failure to act"—that is, a plaintiff must show not only that she was induced into "action or inaction" by the defendant's "statement, admission, act, or failure to act," but also that that her action or inaction was "reasonable." *Jeppesen*, 2018 UT App 234, ¶ 33 (citation omitted). If we are to accept the truism that "promises are made to be broken," we can't imagine that any reasonable party would accept a mere promise to pay at face value. Thus, even if a mere promise to pay *were* "inconsistent with a claim later asserted" (and it is not), the reasonableness element of the equitable estoppel test indicates that such reliance would be insufficient.

¶29   We are not the only court to draw this line. The principle that a mere promise to pay, without more, is insufficient to invoke equitable estoppel has been expressed by courts in other jurisdictions. Georgia identified this principle as early as 1939 in *Bank of Jonesboro v. Carnes*, where creditors were precluded from using equitable estoppel to toll a statute of limitations because the debtor merely "sat among his associates on the board of directors and at times discussed [his debts] and stated he would pay them." 2 S.E.2d 495, 499 (Ga. 1939). In fact, the debtor never "sought an extension, or withdrawal of any suit, [nor was a] suit . . . ever actually proposed or threatened. There was no agreement on his part not to plead the statute, and no express request for indulgence." *Id.* Similarly, in *Grass v. Eiker*, creditors were precluded from using equitable estoppel to toll a statute of limitations because, when the creditors repeatedly demanded payment, the debtor had merely replied that "he had other uses for the money and he just couldn't pay." 135 A.2d 153, 154 (D.C. Mun. Ct. 1957). The court rejected these statements as grounds for estoppel, stating,

> [a]t most it represents a bare verbal promise to pay the debt at a vague future time with an implied request for forbearance on the part of [the creditor] until [the debtor] could secure more funds. [The debtor] never agreed to waive the statute nor did he ask [the creditor] to refrain from bringing suit.

*Id.*

¶30   And courts have continued to abide by similar limitations more recently. A New York appellate court found that "[m]ere promises to pay in the future . . . are insufficient to support a theory of equitable estoppel" without evidence showing that the debtor "intended to lull" the creditors into inaction. *In re Estate of Thomas*, 124 A.D.3d 1235, 1241 (N.Y. App. Div. 2015) (quoting *Erlichman v. Ventura*, 271 A.D.2d 481, 481 (N.Y. App. Div. 2000)). Connecticut courts similarly have required evidence that the debtor "intended or calculated" inducement of inaction but emphasized that the misrepresentation "must relate to some present or past fact or state of things, as distinguished from mere promises or statements as to the future. The misrepresentation must be one of fact and not of intention to support equitable estoppel." *Wells Fargo Bank, N.A. v. Riverview E. Windsor, LLC*, 2010 WL 5610864, at *3 (Conn. Super. Ct. 2010) (citation omitted)). And on the other side of the country, California courts have required that the promise "be reasonably relied upon," and will consider, among other showings, "that a promise to pay has been related to the happening of a specific event," such as upon getting "a good start in [the debtor's] business" or "termination of suit against person secondarily liable." *CPI Advanced, Inc. v. Kong Byung Woo Comm. Ind. Co., Ltd.*, 2003 WL 25783119, at *6 (C.D. Cal. 2003) (citations omitted), *rev'd on other grounds and remanded*, 135 F. App'x 81 (9th Cir. 2005). Though based on different grounds, we find the conclusions drawn by our sister courts persuasive in clarifying the limitations of the equitable estoppel doctrine. Our clarification today is an objective determination based on preserving the utility of the equitable estoppel exception to the statute of limitations defense, *see supra* ¶ 17, and does not require Utah courts to consider the intent of the defendant (as in New York and Connecticut), nor does it rely solely on the reasonableness requirement (as in California).

¶31   By way of example, this court did find more than a mere promise to pay in *Rice v. Granite School District*, 456 P.2d 159 (Utah 1969). In *Rice*, an insurance adjuster made several promises to the injured plaintiff over the course of a year, including advising her that "she would be compensated," "she would be indemnified for her medical expenses," "the insurance company would accept responsibility and that she was not to worry," and "everything was in proper order." *Id.* at 161. Rice delayed commencing action because she was told by the insurance adjuster that her claim couldn't be processed until the adjuster had ascertained the costs

of her damages. *Id.* Then, abruptly after Rice's limitations period to bring a suit had expired, she was told that her claim was denied. *Id.* After hearing this, Rice instigated a suit to recover for her injuries, but the insurance company filed a motion to dismiss on the ground that her claim was barred by the one-year limitations period. *Id.* at 160. Such actions by the insurer were enough for a reasonable trier of fact to conclude that the insurance carrier made more than a mere promise to pay. *See id.* at 163. Indeed, beyond representing to Rice that it was waiting for key information before it could file the claim, the insurance carrier admitted liability and promised compensation upon several occasions. Unlike the debtor in *Grass*, who merely said he "had other uses for the money and he just couldn't pay," the insurer "lull[ed] [Rice] into a false sense of security," by accepting responsibility, promising payment, and telling Rice not to worry and that everything was in order. Further, even the defendant in *Rice* recognized that the facts involved more than a mere promise to pay; rather, the question was "whether negotiations for the compromise of a claim or debt will give rise to an estoppel" defense. *Id.* at 163. These statements by the insurer went beyond those of the debtor in *Bank of Jonesboro*, who merely stated he would pay a debt he was already bound to pay.

¶32 In sum, a mere promise to pay—such as a bare verbal promise to pay a debt at a vague future time with an implied request for forbearance, or merely restating that a debt will be paid—without more is not sufficient to invoke the doctrine of equitable estoppel. That being said, we do not claim that this is a complete explanation of the equitable estoppel doctrine as a whole, particularly regarding what sufficiently constitutes a "statement, admission, act, or failure to act . . . inconsistent with a claim later asserted." Future cases will present opportunities to more fully define the contours of the equitable estoppel test.

## II.

¶33 Now that we have clarified that equitable estoppel is a discrete basis for tolling a limitations period and that a mere promise to pay, without more, is insufficient to successfully invoke the equitable estoppel doctrine, we turn to the case before us. In reviewing Alpine East's Rule 59 Motion, the district court relied on the court of appeals' ruling in *Jeppesen v. Bank of Utah*, 2018 UT App 234, 438 P.3d 81, to determine that a material issue of fact exists as to whether Owners' promises reasonably induced Alpine East to inaction under an equitable estoppel framework.

¶34 We're taking a step back from the district court's position. We agree with the court that equitable estoppel is a discrete basis for tolling a statute of limitations. But, given our primary role today in clarifying the law, we choose to vacate its determination and remand for further proceedings consistent with our clarification. On remand, the district court will be in the best position to determine in the first instance if a material issue of fact exists as to whether Fitzgerald's promises constituted more than a mere promise to pay.

## CONCLUSION

¶35 Equitable estoppel protects a creditor when she has reasonably relied on a statement or act, made by the debtor, inconsistent with the debtor's later assertion of a statute of limitations defense. We find the doctrine is a stand-alone basis, distinct from equitable discovery, for defeating a statute of limitations defense. However, given the nature of debt, the doctrine's reasonableness requirement, and similar conclusions in our sister jurisdictions, we also find that a mere promise to pay, without more, even though relied upon by a party, is insufficient to invoke equitable estoppel. As such, we vacate the district court's denial of summary judgment and remand for further proceedings in accordance with this opinion.

———————